# In the
# United States Court of Appeals
## For the Seventh Circuit

––––––––––

No. 05-2357

IN RE: TERRY TAYLOR,

*Petitioner.*

––––––––––

Petition for Writ of Mandamus to the
United States District Court for the
Northern District of Illinois, Western Division.
No. 04 CR 50038—**Philip G. Reinhard**, *Judge.*

––––––––––

SUBMITTED MAY 16, 2005—DECIDED JULY 29, 2005

––––––––––

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Terry Taylor seeks Judge Philip G. Reinhard's disqualification from presiding over a criminal case pending against Taylor because Judge Reinhard has twice been a defendant in civil cases filed by Taylor. Prior to trial, Judge Reinhard denied Taylor's motion for disqualification under 28 U.S.C. § 455(a). We agree with Judge Reinhard that he was not required to disqualify himself from presiding over Taylor's case, and accordingly deny Taylor's petition for writ of mandamus. Because we have not previously addressed a situation where a litigant sought disqualification under 28 U.S.C. § 455(a) based on his prior suit against the judge, we provide the following explanation for our denial.

**BACKGROUND**

Taylor's federal litigation began when he filed four suits on the same day, April 4, 1996, in the Northern District of Illinois, Western Division. The first suit was against D.E.A. agent James Flint. Taylor alleged that Flint came to Taylor's room at the hotel where Taylor was living, asked for a cigarette, and then hit Taylor over the head with a bottle. In a separate suit, Taylor alleged that neighbors whom he believed were undercover police officers beat him up and told him that they would hurt his family if he pressed charges against James Flint. Taylor also separately sued the mayor of Rockford, the city of Rockford, and Jaime Bielfeldt, a woman Taylor had married two years earlier. Taylor alleged that Bielfeldt married him at the mayor's request in order to investigate Taylor. Judge Reinhard denied Taylor's request to proceed in forma pauperis in each of these cases and dismissed each one without prejudice. Taylor lastly sued Ralph Hudson, alleging that Hudson was a D.E.A. agent who had tried to get Taylor to sell drugs for the mayor of Rockford. Hudson was actually not a D.E.A. agent, but rather a defendant in a pending criminal case. Taylor included other individual defendants in this suit but failed to allege that they were involved in any wrongdoing. Judge Reinhard dismissed the case as frivolous.

On May 14, 1996, after Judge Reinhard dismissed Taylor's first four cases, Taylor filed three new cases. He sued Ogle County Jail and three jail employees, claiming that jail staff were punishing him for his litigation against the City of Rockford. He alleged that the employees were deliberately indifferent to his medical needs, but attached medical forms showing that he had in fact been properly treated for his ailments. Taylor also filed a new suit against Mayor Box and the City of Rockford, this time adding Sate's Attorney Paul Logli as a defendant. Taylor reiterated his claims from his prior litigation that D.E.A. agent Flint

assaulted him, that Ralph Hudson attempted to have him sell drugs for the mayor, that police officers beat him to keep him from filing suit against Flint, and that his former wife married him in order to investigate him. Taylor went on to allege that State's Attorney Logli and the mayor conspired to cover up the wrongdoing he had suffered. The district court dismissed the complaints in each of these cases for failure to state a claim.

In a third action filed that day, Taylor sued two of the same defendants—Paul Logli and the City of Rockford— and added Gloria Lind, Winnebago County Clerk, and a state judge, Judge Penniman, as defendants. Taylor claimed that Lind and Judge Penniman participated in the marriage scam created by Paul Logli. Judge Reinhard dismissed the case as frivolous and malicious under 28 U.S.C. § 1915A. He also held that Taylor had used up his allotted three strikes under 28 U.S.C. § 1915(g) and would be subject to future filing restrictions.

Two weeks after filing the above cases, Taylor filed suit against State's Attorney Logli and ten other individual defendants, including employees of Rockford Police Department, additional state's attorneys, and the Fire and Police Commissioner. He alleged that before he had been incarcerated he had been shot at by one of the police officer defendants. Judge Reinhard ordered Taylor to show cause why his case should not be dismissed under 28 U.S.C. § 1915(g). On the same day Taylor filed his eleven-defendant case, he separately sued seventeen individuals— again including Logli—and this time named as defendants a number of public defenders, more state's attorneys, two state judges, and a court reporter. This suit complained of the state's inadequate 1986 prosecution of police officer Mike Hill, who Taylor says shot him. Judge Reinhard issued a show-cause order under 28 U.S.C. § 1915(g) in this case as well. Instead of responding to either show-cause order, Taylor filed notices of appeal.

Taylor returned to federal court in October 1996 to file suit against the same defendants listed in his seventeen-defendant case, in addition to two new defendants. Taylor alleged that a state judge, Judge Nelson, had sentenced Mike Hill to 30 years' imprisonment, but that the listed defendants (including Judge Nelson) all conspired to keep Hill from serving his sentence. Upon filing, Taylor moved for the case to be heard by Magistrate Judge Mohoney because, Taylor claimed, Judge Reinhard is friends with Judge Nelson and Paul Logli. Taylor argued that Judge Reinhard's friendships are evidenced by his adverse rulings against Taylor. Taylor later moved to add a number of defendants, including an eye care center that he alleged had put contact lenses on his eyes to keep him from being able to see that Mike Hill was still employed by the Rockford Police Department. Taylor filed a subsequent motion for Judge Reinhard to recuse himself because, Taylor explained, he planned to file a separate suit against Judge Reinhard. Judge Reinhard denied the recusal motions and dismissed the case as frivolous under 28 U.S.C. § 1915A.

Taylor filed his next federal suit, case no. 97 C 50233, in June 1997. Taylor submitted a single-spaced list of defendants that fills a page and includes state judges, state's attorneys, psychiatrists, police officers, jail officials, clerks of state and federal courts, medical facilities, and Judge Reinhard. The complaint claims that Judge Reinhard "has used his power as a judge to try and cover up five attemt [sic] murder's [sic] on my life." The evidence of this cover-up, Taylor contended, was Reinhard's dismissal of Taylor's cases. Taylor goes on to allege that Judge Reinhard conspired with the Clerk of the Seventh Circuit and the pro se clerk to have a prior appeal dismissed under Rule 42(b). Taylor requested damages for mental anguish and the reinstatement of his prior cases as relief. In an attachment to his complaint, Taylor explains that Judge Reinhard has

previously ruled against him because the state court judges are "friends in the robe." On July 9, 1997, Judge Reinhard dismissed the appeal under 28 U.S.C. § 1915(g), and noted that he would recuse himself from the case should Taylor pay the filing fee.

Taylor filed his last case, no. 97 C 50332, in the fall of 1997. He sued Judge Reinhard again, this time including him as a defendant alongside a number of police officers, medical facilities, and the Rockford coroner's office. This complaint alleged that the coroner's office's forged death certificates and that an eye facility forced Taylor to wear blinding eye contacts. According to the complaint these acts were evidence of a larger conspiracy to keep Taylor from finding out that corrupt police officers were still employed by the Rockford Police Department. There are no specific allegations against Judge Reinhard. On September 30, 1997, Judge Reinhard dismissed the case without prejudice and enjoined Taylor from filing any further suits aside from petitions for writ of habeas corpus pending this court's resolution of Taylor's other appeals. This court affirmed Judge Reinhard's dismissals in both of the cases where he was listed as a defendant, and affirmed or dismissed all of Taylor's other appeals.

## ANALYSIS

Taylor's petition for writ of mandamus focuses primarily on the first case in which Judge Reinhard was included as a defendant, case no. 97 C 50233, because Taylor alleged wrongdoing specifically against Judge Reinhard in that case. There is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties. *See Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1375 (7th Cir. 1994) (en banc); *United States v. Watson*, 1 F.3d 733, 735 (8th Cir. 1993); *United States v. Grismore*,

654 F.2d 929, 933 (10th Cir. 1977). One reason for this policy is that a per se rule of disqualification would allow litigants to judge shop by filing a suit against the presiding judge. *See generally In re Nettles* ,394 F.3d 1001, 1003 (7th Cir. 2005). And even if litigation against a judge is not for the purpose of disqualification, recusal is not automatic because suits against public officials are common and a judge would likely not harbor bias against someone simply because the person named him in a meritless civil suit. *Lyons v. Sheetz*, 834 F.2d 493, 495, n.1 (5th Cir. 1987); *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985). In deciding whether recusal is necessary, a court also should consider the time that has passed; courts have held that personal bias arising from past litigation will likely erode over time. *See Balistrieri*, 779 F.2d at 1200 (ten-year lapse between event that allegedly caused bias and recusal motion weighed against finding of bias); *see also Tezak v. United States*, 256 F.3d 702, 717 (7th Cir. 2001) (eight-year lapse weighs against finding of bias).

All of the above cited cases that discuss lawsuits against judges address actual bias, rather than appearance of bias under 28 U.S.C. § 455(a). The same factors discussed in determining actual bias should be considered in determining appearance of bias, however, because the reasonable observer contemplated in § 455(a) is a well-informed, thoughtful observer. *See Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). And courts have addressed similar factors—the purpose and merit of an action—in determining whether other actions against judges, specifically threats of harm, create an appearance of bias requiring disqualification under § 455(a). *See Nettles*, 394 F.3d at 1002-03 (disqualification required because defendant's threat was genuine even though judge was never in any actual danger); *United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003) (threat against judge made for purpose of harassment does not require disqualification); *United States v. Greenspan*, 26

F.3d 1001, 1006 (10th Cir. 1994) ("Had there been any reason to believe that threats were made only in an attempt to obtain a different judge, to delay the proceedings, to harass, or for other vexatious or frivolous purpose, recusal would not have been warranted.").

At first glance, Taylor's prior litigation against Judge Reinhard seems to be a proper ground for recusal under 28 U.S.C. § 455(a). The civil litigation had concluded before Taylor was charged in this case and was clearly not filed for the purpose of the later recusal. And the prior litigation accused Judge Reinhard of conspiring with state officials in the alleged cover-up of illegal activity—allegations that if true would not be covered by judicial immunity.

But a well-informed observer, one who knew the details of the prior litigation, would not believe that the civil cases required recusal. First, the claims against Judge Reinhard were frivolous. Taylor alleged no facts that show a connection between Judge Reinhard and any of the other defendants that would support Taylor's conspiracy claims. Taylor alleged only that Judge Reinhard and the state judges were "friends in the robe"—apparently an allegation that judges form an improper alliance based only on their position. The claims against Judge Reinhard are one small part of a frivolous litigation pattern. Taylor, who apparently was not mentally stable when he filed these suits, may have sincerely believed that all local, state, and federal officials with whom he had contact were in a conspiracy against him. But this belief does not make his claims meritorious. *See Gladney v. Pendleton Correctional Facility*, 302 F.3d 773, 774 (7th Cir. 2002).

Additionally, although Taylor's inclusion of Judge Reinhard in the civil cases was not for the purpose of recusal in the subsequent criminal case, it does appear to have been for the purpose of having Taylor's civil litigation heard by another judge. The only factual allegation that

Taylor attributes to Judge Reinhard is the judge's dismissal of his earlier cases, and the relief Taylor seeks is to have his prior cases reinstated and heard by another judge. Lastly, eight years have passed since the conclusion of Taylor's cases against Judge Reinhard. Even if Judge Reinhard was personally biased against Taylor in 1997, it is unlikely that a reasonable observer would think that his judgment was still clouded today. *See Balistrieri*, 779 F.2d at 1200.

## CONCLUSION

For the above reasons, we conclude that Judge Reinhard correctly found that disqualification was not required under 28 U.S.C. § 455(a) and therefore Taylor's petition for writ of mandamus is DENIED.

A true Copy:

     Teste:

                 _____
                 *Clerk of the United States Court of Appeals for the Seventh Circuit*